IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:18-CR-116-MHT-WC-1 |
| | ) | |
| G. FORD GILBERT | ) | |

## PLEA AGREEMENT

## I. BACKGROUND INFORMATION

**A.  Attorneys**

| | |
|---|---|
| Defense Attorneys: | Richard S. Jaffe, Michael Patrick Hanle, Michael W. Whisonant, Jr., and Brett H. Knight |
| Assistant United States Attorneys: | Jonathan S. Ross, Joshua J. Wendell, and Stephanie C. Billingslea |

**B.  Counts and Statutes Charged**

Count 1:     18 U.S.C. § 371 – Conspiracy

Counts 2–5:  18 U.S.C. § 666(a)(2) – Bribery concerning a program receiving federal funds

Counts 6–7:  18 U.S.C. § 1952(a)(3) – Violation of the Travel Act

**C.  Count Pleading Pursuant to Plea Agreement**

Count 1:     18 U.S.C. § 371

**D.  Statutory Penalties**

Count 1:     18 U.S.C. § 371

A term of imprisonment of not more than 5 years, a fine of not more than $250,000 or twice the value of the property involved in the transaction, whichever is greater, or both the fine and imprisonment; a term of supervised release of not more than 3 years; an assessment fee of $100; and an order of restitution.

### E.   Elements of the Offense

| Count 1: | 18 U.S.C. § 371: |
|---|---|
| First: | Two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
| Second: | The defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; |
| Fourth: | The overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

| Object Offense: | 18 U.S.C. § 666(a)(2): |
|---|---|
| First: | The defendant gave something of value to a person; |
| Second: | The defendant did so with the intent to corruptly influence or reward an agent of an organization or of a state, local, or Indian tribal government; |
| Third: | The defendant gave the thing of value in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; and |
| Fourth: | The organization, government, or agency at issue receives, in any one-year period, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance. |

## II. INTRODUCTION

Jonathan S. Ross, Joshua J. Wendell, and Stephanie C. Billingslea, Assistant United States

Attorneys, and Richard S. Jaffe, Michael Patrick Hanle, Michael W. Whisonant, Jr., and Brett H.

Knight, attorneys for the defendant, G. Ford Gilbert, pursuant to Rule 11(c)(1)(A) and Rule

11(c)(1)(C) of the Federal Rules of Criminal Procedure, with the authorization of the defendant,

submit this plea agreement. The terms are as follows.

## III. THE GOVERNMENT'S PROVISIONS

1.      Pursuant to Rule 11(c)(1)(C), the government agrees to recommend that a 12-month

sentence is the appropriate disposition of the case. The government agrees to further recommend

that such 12-month sentence consist of 6 months' imprisonment and 6 months of home detention.

2

2.     The government acknowledges that the defendant assisted authorities in the investigation and prosecution of the defendant's own misconduct by timely notifying the government of the defendant's intention to enter a guilty plea, thereby permitting the government to avoid preparing for trial and allowing the government and the Court to allocate resources efficiently.  Provided the defendant otherwise qualifies, and that the defendant does not, before the date of the sentencing hearing, either personally or through the actions of the defense attorney on behalf of the defendant, take any action inconsistent the acceptance of responsibility, the government will move at or before the sentencing hearing for a further reduction of one level.  See U.S.S.G. § 3E1.1(b).  Determination of whether the defendant met the defendant's obligations to qualify for a reduction pursuant to § 3E1.1(b) is at the sole discretion of the government.  Further, the government reserves the right to oppose the defendant's receiving a two-level reduction pursuant to § 3E1.1(a) should the government receive information indicating that, between the date of the plea hearing and the date of the sentencing hearing, the defendant, either personally or through the actions of the defense attorney on behalf of the defendant, has acted inconsistent with the acceptance of responsibility.

3.     Pursuant to Rule 11(c)(1)(C), the government agrees to recommend that, for the purposes of calculating the defendant's advisory Guidelines range: (1) the defendant's base offense level is 12, see U.S.S.G. § 2C1.1(a)(2); (2) the offense did not involve more than one bribe or extortion, see U.S.S.G. § 2C1.1(b)(1); (3) the value of the payment and the value of the thing obtained by the public official was $2,000, see U.S.S.G. § 2C1.1(b)(2); (4) the benefit to be received in return for the payment was speculative such that its  value cannot be reasonably determined, see id.; see also U.S.S.G. § 2B1.1(b)(1); (5) the government did not incur a loss as a

result of the offense, see U.S.S.G. § 2C1.1(b)(2); (6) the offense involved an elected public official, see U.S.S.G. § 2C1.1(b)(3); (7) the defendant's adjusted offense level is 18; (8) other than the adjustment discussed in paragraph 2 and provided for in § 3E1.1, the defendant is not subject to any other Chapter 3 adjustments; (9) the defendant's total offense level is 15; (10) the defendant's criminal history category is I; and (10) the defendant's advisory Guidelines range is 18 to 24 months' imprisonment, see U.S.S.G. Ch. 5, Pt. A (sent'g table).

4.      Pursuant to Rule 11(c)(1)(A), the government agrees that it will, at the sentencing hearing, move to dismiss Counts 2 through 7.  The government further agrees that it will not bring any additional charges against the defendant for the conduct described in the Superseding Indictment.  The government further agrees that it will dismiss the forfeiture allegation.

5.      The government agrees to recommend that the defendant not be ordered to pay restitution to any victim, as no victim suffered a financial loss as a result of the defendant's conduct.

## IV. THE DEFENDANT'S PROVISIONS

6.      The defendant agrees to plead guilty to Count 1 and to make factual admissions of guilt in open court.  The defendant further agrees to waive any right the defendant may have to subsequently withdraw the guilty plea pursuant to Rule 11(d).  The defendant also promises to refrain from taking any action inconsistent with the defendant's acceptance of responsibility for the offense to which the defendant is pleading guilty.

7.      The defendant agrees to waive and hereby waives any right to request a downward variant sentence consisting of less time of imprisonment and home detention than the downward variant sentence to be requested by the government, as described in paragraph 1.  That is, the

defendant waives his right to request a sentence that consists of anything less than 6 months' imprisonment and 6 months' home detention.

8.      The defendant understands that the defendant will be permitted to withdraw the guilty plea in the event that the Court does not accept any or all of the recommendations made pursuant to Rule 11(c)(1)(C).  The defendant also understands that the defendant will be allowed to withdraw the guilty plea in the event that the Court does not accept any or all of the provisions set forth pursuant to Rule 11(c)(1)(A).

9.      The defendant agrees not to commit any other federal, state, or local offense while awaiting sentencing, regardless of whether that offense is charged or chargeable.  The defendant agrees to provide truthful information to Probation and to the Court in all presentence and sentencing proceedings.

10.     The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of the Court.  The defendant acknowledges that the full fine and restitution amounts shall be considered due and payable immediately.  If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of Probation at any time, the defendant agrees that the United States Bureau of Prisons and Probation will have the authority to establish payment schedules to ensure payment of the fine and restitution.  The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off from federal payments, execution on non-exempt property, and any other means the government deems appropriate.  The defendant also agrees that the defendant may be contacted by government officials regarding the collection of any financial obligation imposed by the Court without notifying the defendant's attorney and outside the presence of the defendant's attorney.

5

11.     To facilitate the collection of financial obligations imposed in this case, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party.  Further, the defendant will, if requested by the government, promptly submit a completed financial statement to the Office of the United States Attorney for the Middle District of Alabama in a form the government provides and as the government directs.  The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful. The defendant expressly authorizes the government to obtain a report on the defendant's credit in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

12.     The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this agreement or that may be imposed upon the defendant by the Court.  In addition, the defendant promises that the defendant will make no such transfers in the future.

13.     The defendant agrees to pay the $100 assessment fee on the date of sentencing.

14.     The defendant agrees to waive and hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, but not limited to, any records that may be sought under the Freedom of Information Act, see 5 U.S.C. § 552, or the Privacy Act of 1974, see 5 U.S.C. § 552a.

## V. FACTUAL BASIS

15.     The defendant admits the allegations charged in the Superseding Indictment and understands that the nature of the charges to which the plea is offered involves proof as to Count

1. Specifically, the defendant admits the following to be true and correct:

        a.      At all relevant times, Trina Health, LLC (Trina Health) was a Nevada limited liability corporation. Previously, Trina Health was registered as a California corporation. Trina Health was headquartered in McClellan Park, California. Trina Health operated, through license agreements, outpatient diabetes treatment clinics. Each clinic employed one or more health care providers to oversee the diabetes treatment being provided at those clinics.

        b.      At all relevant times, Defendant Gilbert was the president of Trina Health.

        c.      At all relevant times, health care providers affiliated with Trina Health or a Trina Health licensee provided "Artificial Pancreas Treatment." This treatment was a diabetes treatment.

        d.      At all relevant times, Alabama was a state.

        e.      The government of the state of Alabama received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2015 and ending December 31, 2015. The government of the state of Alabama again received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2016 and ending December 31, 2016.

        f.      At all relevant times, Micky Ray Hammon was a member of the Alabama House of Representatives. Hammon represented House District 4, which consisted of portions of Limestone County and Morgan County, Alabama. From in or about 2010 until in or about 2017, Hammon was a member of the majority party and was the Majority Leader of the Alabama House of Representatives. Hammon was also a member of the Commerce and Small Business Committee. As a member of the Alabama Legislature, Hammon was an agent of the state of Alabama.

g.      In or about 2014 and 2015, a Texas-based company opened two Trina Health-affiliated clinics in Alabama.  One of those clinics was located in Foley, Alabama.  The other was located in Fairhope, Alabama.  Soon after the clinics opened, the health care providers employed by the clinics began to submit claims to health insurance programs and companies, including Blue Cross Blue Shield of Alabama (BCBS-AL) for reimbursement for the Artificial Pancreas Treatment.

h.      In or about May of 2015, BCBS-AL determined that it had erroneously paid the claims submitted by the health care providers employed by the Foley and Fairhope Trina Health-affiliated clinics.  Accordingly, around that time, BCBS-AL sent letters to those health care providers requesting repayment of the erroneously paid monies.  Soon thereafter, Gilbert became aware of BCBS-AL's recoupment effort.

i.      From in or about August of 2015 through in or about January of 2016, Gilbert and others attempted to persuade BCBS-AL officials to abandon their recoupment effort and, going forward, cover the Artificial Pancreas Treatment.  Those efforts were not successful.

j.      When Gilbert was unable to persuade BCBS-AL to change its position regarding coverage of the Artificial Pancreas Treatment, Gilbert decided to attempt to persuade the Alabama Legislature to enact a statute that would have the effect of mandating the BCBS-AL and other health insurance companies operating in Alabama cover the Artificial Pancreas Treatments provided on an outpatient basis at Trina Health-affiliated clinics.

j.      From in or about February of 2016 through in or about April of 2016, in Montgomery County, Alabama and elsewhere, Gilbert knowingly and intentionally conspired, combined, and agreed with Hammon to commit an offense against the United States, that is,

8

bribery concerning a program receiving federal funds, in violation of 18 U.S.C. § 666(a)(2).

k.      Specifically, Gilbert and Hammon agreed that Gilbert would corruptly give to Hammon things of value with the intent to influence or reward Hammon in connection with a business, transaction, or series of transactions of such organization, government, or agency involving something of value of $5,000 or more.

l.      The business at issue was the possibility that BCBS-AL would be required to cover the Artificial Pancreas Treatment.   Because BCBS-AL provided health insurance coverage on the state's behalf to state employees, BCBS-AL's coverage decisions had an effect on the state budget.  Had BCBS-AL been required to cover the Artificial Pancreas Treatment, the costs to the Alabama government would have exceeded $5,000.

l.      In or about March of 2016, Gilbert drafted a bill to be introduced in the Alabama House of Representatives.   The draft legislation, if it were enacted, would have effectively required BCBS-AL to cover the Artificial Pancreas Treatment.

m.      On or about March 15, 2016, a member of the Alabama House of Representatives introduced Gilbert's draft bill.  The draft bill was numbered House Bill (H.B.) 415.  The Speaker of the Alabama House of Representatives assigned the bill to the Commerce and Small Business Committee.  Soon thereafter, the chairman of the Commerce and Small Business Committee scheduled a public hearing on H.B. 415 for April 13, 2016.

n.      On or about April 7, 2016, Gilbert, through and account controlled by Trina Health, corruptly wired and caused to be wired $2,000 into Representative Hammon's personal bank account.  Gilbert did so to influence Hammon and to cause Hammon to influence other legislators in connection with the upcoming public hearing.

9

o.    On or about April 13, 2016, the Commerce and Small Business Committee of the Alabama House of Representatives convened a public hearing on H.B. 415. Before that hearing, Representative Hammon influenced other legislators to appear at the hearing and to speak in support of H.B. 415. Representative Hammon did so based on the receipt of the payment from Gilbert.

## VI. THE DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

16.    Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the conviction or sentence. The defendant further expressly waives the right to attack the conviction or sentence in any post-conviction proceeding, including proceedings pursuant to 28 U.S.C. § 2255. Exempt from this waiver is the right to appeal or collaterally attack the conviction or sentence on the grounds of ineffective assistance of counsel or prosecutorial misconduct.

17.    In return for the above waiver by the defendant, the government does not waive its right to appeal any matter related to this case, as set forth at 18 U.S.C. § 3742(b). However, if the government decides to exercise its right to appeal, the defendant is released from the appeal waiver and may pursue any appeal pursuant to 18 U.S.C. § 3742(a).

## VII. BREACH OF THE PLEA AGREEMENT

18.    The parties agree that the issue of whether either party has breached this agreement at any time is one that will be resolved by the Court by a preponderance of the evidence, except as set forth in paragraph 20. The parties agree that, should either party obtain information causing the party to develop a good faith belief that the other party has breached this agreement, then the

party will promptly file a written motion—or make an oral motion if doing so would be more expedient—asking that the Court declare the other party to be in breach of the plea agreement.

19.     The parties agree that, a breach of the plea agreement by the defendant would include, but not be limited to: (1) failing to fulfill each of the defendant's obligations under this plea agreement; (2) committing new criminal conduct; or (3) seeking to withdraw the guilty plea or otherwise engaging in conduct inconsistent with an acceptance of responsibility.  Should the Court find the defendant to have breached this agreement: (1) the government will be free from its obligations under this agreement; (2) the defendant will not be permitted to withdraw the guilty plea; (3) the defendant's obligations and waivers under this agreement will remain in full force and effect; (4) the defendant will be subject to prosecution for other crimes; and (5) the government will be free to use against the defendant, directly and indirectly, in any criminal or civil proceeding, all statements by the defendant and any information or materials provided by the defendant, including statements made during the plea hearing and all statements made by the defendant pursuant to proffer letters.

20.     The parties agree that, in the event that the defendant breaches this agreement by committing new criminal conduct, the government will be required to only establish probable cause to believe that the defendant committed a new criminal offense for the Court to find the defendant in breach of the plea agreement.

21.     The parties agree that, should the Court find the government in breach of this plea agreement, the defendant may cancel this agreement and thus be released from the appellate and collateral attack waivers.  The parties further agree that a breach of the plea agreement by the government will not automatically entitle the defendant to withdraw the guilty plea and, if the

11

defendant should seek to withdraw the guilty plea on the basis of such a breach, then the defendant will be required to file a motion pursuant to Rule 11(d).

## VIII.  THE DEFENDANT'S ACKNOWLEDGEMENTS

22.    The defendant understands that the Court is neither a party to nor bound by this agreement.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the Court will determine the advisory Guidelines range and the sentence.  The defendant acknowledges that the defendant and the defendant's attorney have discussed the advisory Guidelines and the statutory sentencing factors set forth at 18 U.S.C. § 3553(a) and the defendant understands how those provisions may apply in this case.  The defendant further understands that the defendant will have no right to withdraw a guilty plea on the basis that the Court calculates an advisory Guidelines range that differs from the range projected by the defense attorney or the government.

23.    The defendant acknowledges that the defendant authorized and consented to the negotiations between the government and the attorney for the defendant that led to this agreement.

24.    The defendant understands that: (1) in pleading guilty, the defendant may be required to make statements under oath; and (2) the government has a right to use against the defendant, in a prosecution for perjury or for making a false statement, any statement that the defendant makes.  However, as the defendant understands, the government may not use as evidence against the defendant in any future proceeding involving the charges alleged in the Superseding Indictment or related offenses, the defendant's guilty plea if the Court permits the defendant to withdraw that guilty plea.

25.    The defendant understands that if the defendant pleads guilty pursuant to this

12

agreement and the Court accepts that guilty plea, the defendant will waive certain rights, namely: (1) the right to plead not guilty or to persist in a plea of not guilty; (2) the right to a jury trial; (3) the right to be represented by counsel—and if necessary to have the Court appoint counsel— at trial and at every other stage of the proceeding; and (4) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

26.     The defendant understands: (1) the nature of each charge to which the defendant is pleading guilty; (2) the maximum and minimum penalties associated with each charge to which the defendant is pleading guilty, including imprisonment, fine, and a term of supervised release; (3) any applicable mandatory minimum penalty associated with a charge to which the defendant is pleading guilty; and (4) the Court's obligation to impose a special assessment.

27.     The defendant confirms that the entirety of any agreement between the defendant and the government is as set forth in this agreement and any addendum to this agreement and that the government has not made any promises to the defendant other than those contained in this agreement and any addendum to this agreement.  This agreement consists of 15 pages and 32 paragraphs and an addendum.

28.     The defendant confirms that counsel has competently and effectively represented the defendant throughout the proceedings leading to the entry of a guilty plea.  The defendant is satisfied with such representation.

29.     The defendant enters this plea agreement and pleads guilty freely and voluntarily. That is, the defendant acts without being influenced by any threats, force, intimidation, or coercion of any kind.

13

30.     The defendant understands that this agreement binds only the Office of the United States Attorney for the Middle District of Alabama and that the agreement does not bind any other component of the United States Department of Justice, nor does it bind any state or local prosecuting authority.

## IX.  THE ATTORNEYS' ACKNOWLEDGEMENTS

31.     The attorneys for the government and for the defendant acknowledge that this plea agreement contains the entirety of any agreement between the parties and that the parties reached this plea agreement in accordance with the procedure set forth at Rule 11.

32.     The attorney for the defendant confirms that the attorney for the defendant advised the defendant of: (1) the nature of the charges to which the defendant is pleading guilty; (2) the penalties associated with those charges; (3) the rights that the defendant is waiving by pleading guilty; and (4) the possibility that statements made by the defendant under oath during a plea hearing may be used against the defendant in a subsequent prosecution for perjury or for making a false statement.

This  4th  day of  January , 2019.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
UNITED STATES ATTORNEY

Verne H. Speirs
Criminal Chief

Jonathan S. Ross
Assistant United States Attorney

14

G. Ford Gilbert
Defendant

Richard S. Jaffe
Attorney for the Defendant

15